UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/31/2025
```

------------------------------------------------------------------ X
                               :

ARTHUR PICCOLO,              :
                               :

                Plaintiff,      :          1:25-cv-2617-GHW
                               :

            -v-                :             ORDER
                               :

NEW YORK CITY BOARD OF ELECTIONS,    :
                               :

               Defendant.      :
                               :
------------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Arthur Piccolo thinks that he should be the Mayor of New York City.  Rather than collecting signatures in support of a petition to appear on the ballot—or doing any other work that has been revealed to the Court—Mr. Piccolo filed this lawsuit demanding that the Court order that he be placed on the primary ballot as a Democratic nominee for Mayor.  Mr. Piccolo asserts that the petition process administered by the New York City Board of Elections (the "Board") is constitutionally defective.  He seeks structural injunctive relief, on the theory that this relief will give him a fair shot at running in future elections.  The Board moved to dismiss his claims for lack of subject matter jurisdiction and for failure to state a claim.  Because Mr. Piccolo has not shown that he has standing to pursue his claims and because the provisions of New York's election law that he challenges do not violate the United States Constitution, the Court GRANTS the Board's motion to dismiss.

## II.    BACKGROUND

### A.    The New York City Board of Elections

The New York City Board of Elections is a commission of ten members, appointed by the New York City Council and entrusted with administering New York City elections.  N.Y. Elec. Law

§ 3-200. "Each of the major political parties shall be eligible to recommend appointment of an equal number of commissioners." *Id.* § 3-200(2). The "major political parties" are the "two parties which polled for their respective candidates for the office of governor the highest and next highest number of votes at the last preceding election for such office." *Id.* § 1-104(24).

New York election law outlines the process by which the Board must conduct primary elections. *See* N.Y. Election Law §§ 6-100, *et seq.* As is relevant to this case, the "designation of a candidate for party nomination at a primary election . . . shall be by designating petition." *Id.* § 6-118. A designating petition for a New York City mayoral primary must be filed "in the office of the Board of Elections" of New York City, *id.* § 6-144, "not earlier than the thirteenth Monday before, and not later than the twelfth Thursday preceding the primary election," *id.* § 6-158(1). The petitioning period is approximately five weeks long. *See id.* § 6-134(4). Only enrolled voters of a party may sign a designating petition for a candidate seeking to appear on the ballot as a member of that party. *Id.* § 6-132. The signatures must be ink signatures. *Id.* An individual may also seek office by filing an "independent nomination," which only requires that the signatories be registered voters who have not signed another petition nominating "the same or a different person for the same office." *Id.* § 6-138. State law does not prescribe a minimum number of signatures needed for a designating petition for the New York City mayoral primary, but states that "[f]or any office to be filled by all voters of the city of New York," the "number of signatures need not exceed . . . seven thousand five hundred signatures." *See id.* § 6-136(2)(a). The New York City Charter requires a candidate for mayor to obtain 3,750 signatures for either a designating petition or an independent nominating petition. *See* N.Y.C. Charter § 1057-b(a)(1). New York law deems a petition "presumptively valid if it is in proper form and appears to bear the requisite number of signatures, authenticated in a manner prescribed by [Chapter 17 of New York law]." N.Y. Election Law § 6-154(1). After a petition has been certified, any eligible voter may file written objections within three

days. *Id.* § 6-154(2).

**B.    Facts[1]**

Mr. Piccolo alleges that he was a "serious," "legally qualified" candidate for Mayor of New York City.  Compl. at 3–5.  He alleges that he sought the Democratic party's nomination for the position.  *Id.* at 3.  He alleges that he had a "robust campaign platform" and "demonstrable public support based on his well known and highly respected community activities."  *Id.* at 9.  Mr. Piccolo alleges that he is responsible for various accomplishments related to Bowling Green Park and that he had a "24-point campaign platform."  PI Ex.  Among other accomplishments, Mr. Piccolo alleges that he is responsible for the "world famous Charging Bull" at Bowling Green and the "First St. Pat[r]ick's Day Parade."  *Id.* at 3.  He alleges that despite these accomplishments, he was not well-funded, and that he did not have the institutional support of the Democratic party.  Compl. at 9. Mr. Piccolo alleges that prior to filing the complaint, he did not try to collect signatures for a designating petition.  Opp. at 4.  He alleges that the people who had qualified for the June 2025 Democratic primary were all "aligned with the Democratic Party structure in New York City." Compl. at 14–15.  He also alleges that at least some candidates on the ballot "did not meet the signature requirement."  Opp. at 4.

In addition to his allegations concerning the June 2025 Democratic primary campaign, Mr. Piccolo alleges that there are several flaws with the petition process to secure a place on the primary ballot.  He alleges that the process has three "interlocking issues."  Compl. at 5.  First, he alleges that the partisan makeup of the Board favors "entrenched party interests" and "disadvantag[es]

---

[1] The facts relevant to this motion are drawn primarily from Plaintiff's complaint. Dkt. No. 1, ("Compl."), and are accepted as true for the purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In light of Plaintiff's *pro se* status, the Court considers supplemental allegations made by Plaintiff in opposition to the Board's motion, Dkt. No. 54-2 ("Opp."), Dkt. No. 54-3, and supplemental allegations made by Plaintiff in connection with his motion for a preliminary injunction, Dkt. No. 16 ("PI Ex.").  *See Johnson v. Wright*, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002) (deeming factual allegations contained in pro se plaintiff's brief to "supplement" his pleading).

candidates that are independent of" the two major parties that make up the Board. *Id.* Second, he alleges that the petition process is one of the "most burdensome in the nation," because candidates must physically collect ink signatures that "exceed legal minimums by as much as threefold" "in order to safeguard against challenges." *Id.* at 7. He alleges that this process is burdensome because it requires physical signature collection "within a narrow time window, often in freezing weather." Dkt. No. 54-3 at 1. Finally, he alleges that the verification and challenge process is "vulnerable to errors and fraud." Compl. at 7–8. He alleges that this is the result of the "delegation of signature verification to unregulated private actors." Opp. at 4. Moreover, Mr. Piccolo, citing reports in the media, alleges that the Board has "long been mired in inefficiency and mismanagement." Compl. at 10–14. He also alleges that other jurisdictions have "successfully adopted fully secure electronic petitioning systems for ballot access." *Id.* at 10.

### C.    Prior Proceedings

Mr. Piccolo, acting *pro se*, filed a complaint against the Board on March 26, 2025. *See* Compl. As a result of his limited financial resources, Chief Judge Laura T. Swain—to whom this case was assigned—granted him leave to proceed *in forma pauperis*, without paying the required filing fee. Dkt. No. 5. In his complaint, he alleges that the Board's petition process violated his constitutional rights. Compl. at 14–16. He alleges violations of his equal protection rights under the Fourteenth Amendment because the Board's process favors "well-funded candidates or those backed by established party machines." *Id.* at 15. He also alleges violations of his First Amendment rights, both because the Board's procedures "silence" him as an "individual candidate" "by making it nearly impossible to qualify" for a party's nomination, and because he is "deprived of a genuine choice" as a voter. *Id.* at 16. His complaint sought two forms of injunctive relief: first, for the Court to order the Board to grant him access to the primary ballot for the June 2025 Democratic primary; and second, for the Court to order the Board to implement "a secure, digital petitioning system with

real-time verification . . . and to undertake comprehensive structural and administrative reforms to eliminate partisan bias." *Id.* at 24.

On April 7, 2025, Mr. Piccolo filed a motion for a preliminary injunction ordering the Board to place him on the June 24, 2025 primary ballot. Dkt. No. 10. He argued that he faced "immediate and irreparable harm" because the petition process made it "virtually impossible" for him to otherwise access the ballot. *Id.* at 1. He also argued that he was likely to succeed on the merits because "[t]he U.S. Supreme Court has struck down similarly burdensome ballot-access frameworks." *Id.* at 2 (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983), *Williams v. Rhodes*, 393 U.S. 23 (1968), and *Norman v. Reed*, 502 U.S. 279 (1992)). Finally, he argued that his participation on "fair constitutional grounds" was in the public interest. *Id.*

The Board filed a brief in opposition on May 8, 2025. Dkt. No. 30. The Board first argued that Plaintiff failed to file and serve a notice of constitutional question as required by Federal Rule of Civil Procedure 5.1(a). *Id.* at 5. The Board argued that because the state had not had an opportunity to intervene to defend its statutes, Plaintiff should be denied interim relief. *Id.* Next, the Board argued that because Plaintiff had failed to promptly move for injunctive relief, his motion should be denied under the Supreme Court's decision in *Purcell v. Gonzalez*, 549 U.S. 1 (2006). Dkt. No. 30 at 5–8. The Board noted that the application for preliminary injunctive relief was filed four days after the last day to file a petition for the June 2025 primary. *Id.* at 7. Turning to Plaintiff's argument that he would suffer irreparable harm, the Board argued that Mr. Piccolo did not have a presumptive right to be a candidate, and even if he did, he could not tie the alleged constitutional violations to any personal harm because he himself had failed to even attempt to gather signatures. *Id.* at 8–10. Finally, the Board argued that Plaintiff did not have any likelihood of succeeding on the merits on his Equal Protection claim both because the claim arose out of Plaintiff's failure to build a campaign

and because the state law requirements were rationally related to the State's interest in regulating elections. *Id.* at 10–12.

In a hearing on May 8, 2025, the Court denied Plaintiff's motion for a preliminary injunction. Dkt. No. 39 ("Tr."). The Court construed Plaintiff's claims to be a "facial challenge to the constitutionality of N.Y. Election Law § 6-130, *et seq.*" *Id.* at 23:1–2. The Court held that, evaluating the state laws restricting ballot access under the *Anderson-Burdick* framework, Plaintiff's claims did not "have a substantial likelihood of success on the merits, nor [did they] raise a sufficiently serious question going to the merits." *Id.* at 23:15–18. The Court found that the petition requirement was "far from excessive," even given the Plaintiff's status as an "independent and nonparty backed candidate." *Id.* at 23:18–26:5.

### D.    The Board's Motion to Dismiss

On July 1, 2025, the Board filed its motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. Dkt. No. 52 ("Moving Br."). The Board raised two principal arguments: first, that Mr. Piccolo lacked standing to bring his equal protection challenge and second, that he had failed to state a Section 1983 claim based on either the composition of the Board or the petitioning process. On the first argument, the Board argued that Mr. Piccolo did not suffer injury-in-fact from the Board's partisan position because he was a Democratic candidate. *Id.* at 12. The Board also argued that because Plaintiff had failed to file a petition, any controversy concerning a petition was moot because the election had passed. *Id.* at 13. On the second argument, the Board first argued that courts had rejected similar constitutional challenges to the Board's composition, and that the logic of those decisions applied to Mr. Piccolo's challenge. *Id.* at 13–15. The Board finally argued that the petitioning process was not unduly burdensome, and that the complaint failed to allege how the petition process is "not rationally related to the State's interest in regulating elections or its

legitimate concerns about fraud, verification of signatures, and the efficiency of the signature gathering process." *Id.* at 15–16.

On July 28, 2025, Plaintiff emailed his opposition to the Board. *See generally* Opp. Responding to the Board's standing argument, he argued that his exclusion from the ballot was based on the "failure of the [Board]" to verify signatures, allowing individuals who he alleges did not meet the signature target required to place him on the ballot. *Id.* at 3–4. He argued that he had stated a claim because the Board's composition and its signature verification process "undermines equal protection and due process rights." *Id.* at 5. He then argued that the cases cited by the Board were distinguishable. *Id.* at 5–6. Mr. Piccolo concluded his opposition requesting that the Court order expedited discovery and "consider scheduling an evidentiary hearing." *Id.* at 7–9.

The Board filed a reply on August 18, 2025. Dkt. No. 54. The Board largely repeated the arguments made in its moving brief relating to standing. *Id.* at 2–3. Responding to Plaintiff's argument that the Board allowed individuals who had not met the signature requirement onto the ballot, the Board argued that Mr. Piccolo had not alleged that he had challenged any particular petition. *Id.* at 4. The Board further characterized Mr. Piccolo's claim that the Board should implement electronic signature gathering as an argument for policy change rather than a constitutional claim. *Id.* at 5–6.

## III.    LEGAL STANDARD

### A.    Rule 12(b)(1) Motion to Dismiss

A district court must dismiss a claim under Rule 12(b)(1) if a plaintiff fails to allege facts sufficient to establish standing under Article III of the Constitution. *See Cortlandt Street Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 416–17 (2d Cir. 2015). The plaintiff bears the burden of "alleging facts that affirmatively and plausibly suggest that [he] has standing to sue." *Id.* at 417 (quotation and alteration omitted). Each element of standing "must be supported in the same way as any other

matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Where, as here, "standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (quoting *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998)) (cleaned up).

> Constitutional standing has three "irreducible" elements:
>
> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560–61 (internal citations and quotations omitted). Plaintiffs seeking injunctive relief must also demonstrate that the identified injury-in-fact presents a "real and immediate threat of future injury." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004). "A plaintiff pursuing injunctive relief may not rely solely on past injury, but also must establish that 'she is likely to be harmed again in the future in a similar way.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)). "Such 'threatened injury must be *certainly impending* to constitute injury in fact, and . . . allegations of *possible* future injury are not sufficient.'" *Id.* at 74 (quoting *Am. Civ. Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015)) (emphasis in original). The "constitutional minima [of standing] are assessed as of the time the lawsuit is brought." *Comer v. Cisneros*, 37 F.3d 775, 787 (2d Cir. 1994) (citing *Lujan*, 504 U.S. at 569 n.4).

### B.    Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule Civil Procedure 12(b)(6), "a

complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89 (2007) ("A document filed pro se is 'to be liberally construed' . . . ." (citation omitted)). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting M*aisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Id.* at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

IV.    **DISCUSSION**

A.    **Standing**

Mr. Piccolo has not alleged sufficient facts to establish his standing to bring this lawsuit either as a candidate or as a voter.  As a threshold matter, the Court only analyzes Mr. Piccolo's standing to seek prospective structural relief.  "'A plaintiff must demonstrate standing for each claim and form of relief sought.'"  *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).  Mr. Piccolo's request to be included on the June 2025 ballot is moot because the primary has passed.  *See Indep. Party of Richmond Cnty. v. Graham*, 413 F.3d 252, 256 (2d Cir. 2005).  Therefore, the Court analyzes only whether he has standing to pursue the structural injunctive relief he seeks.  He does not.

i.    **Candidate Standing**

Mr. Piccolo has not established that he has standing as a candidate to pursue his claims under the either the Equal Protection Clause of the Fourteenth Amendment or the First Amendment because he has not established that he suffered an injury in fact.  Where a plaintiff alleges violations of his equal protection rights, "'the injury in fact is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.'"  *Able v. United States,* 88 F.3d 1280, 1291 (2d Cir. 1996) (quoting *Northeastern Florida Chapter of Associated Gen. Contractors v. City of Jacksonville,* 508 U.S. 656, 666 (1993) (internal quotations and alterations omitted)).  Standing to pursue an equal protection claim is established where:  "(1) there exists a reasonable likelihood that the plaintiff is in [a] disadvantaged group, (2) there exists a government-erected barrier, and (3) the barrier causes members of one group to be treated differently from members of [another] group."  *Id.* (quoting *Comer,* 37 F.3d at 793).

Even assuming that Mr. Piccolo meets the disadvantaged group requirement, his complaint does not establish his standing to bring an equal protection claim because it does not allege that any

differential treatment is caused by a government-imposed barrier.[2]  The government-imposed

barriers Mr. Piccolo alleges reduce his opportunity to compete for a spot on the primary ballot are

the absence of adequate signature verification, the partisan composition of the Board, and the

requirement that candidates gather ink signatures in-person.  Compl. at 5–6.  The first two are not

barriers at all.  On the facts alleged in the complaint, they work to the advantage of candidates like

Mr. Piccolo.  First, Mr. Piccolo alleges that he sought to appear on the Democratic primary ballot,

and the Democratic party is one of the two major political parties that comprise the Board's

membership.  *See Sloan v. Michel*, No. 15-cv-6963, 2016 WL 1312769, at *7 (S.D.N.Y. Apr. 4, 2016)

(dismissing equal protection challenge to composition of New York City Board of Elections because

the plaintiff was a member of the Republican party).  Second, the alleged absence of adequate

signature verification makes it *more* likely that Mr. Piccolo and candidates like him could appear on

the primary ballot.  As his opposition suggests, he could have submitted a petition with fewer than

the required number of signatures and still appeared on the ballot.  *See* Opp. at 4.

    Mr. Piccolo has not pleaded sufficient facts to establish that the physical signature

requirement results in denial of equal treatment.  On its face, the physical signature requirement

---

[2] The Court does not believe that Mr. Piccolo has adequately pleaded that he is a member of a disadvantaged group as required by *Comer* to establish standing to pursue a claim under the Equal Protection Clause.  Courts applying the disadvantaged group requirement in *Comer* to equal protection challenges to the administration of facially neutral laws have found standing in cases where the allegedly disadvantaged group was defined by a characteristic traditionally subject to protection under the Equal Protection Clause.  *See, e.g., Thomas v. City of New York*, 143 F.3d 31, 34, 36 n.9 (2d Cir. 1998) (finding standing to challenge a law discriminating against "livery car base station operators, who are alleged to be predominantly African Americans and Hispanics"); *Harnage v. Dzurenda*, 176 F. Supp. 3d 40, 47 (D. Conn. 2016) (finding standing to challenge practice of allegedly administering prison legal assistance program differently based on the gender of the prisoner).  Before issuing its decision in *Comer*, the Second Circuit has also held that members of a major political party had standing to pursue a challenge to New York election law based on the geographic distribution of members of that party.  *See Rockefeller v. Powers*, 74 F.3d 1367, 1382 (2d Cir. 1995) ("The plaintiffs point to a disparity between districts with many Republicans and districts with few Republicans.").  Here, however, Mr. Piccolo does not identify any such category as the source of his alleged disadvantage.  As the Board argues, Mr. Piccolo is a member of the Democratic party, the nomination of which he seeks.  Rather, Mr. Piccolo alleges that he is disadvantaged because he lacks funding and institutional support.  And those deficits may, indeed, disadvantage his candidacy.  However, the Court is unaware of any legal support for the position that candidates with limited support are the kind of "disadvantaged group" that is protected by the Equal Protection Clause.  After all, the election system is designed to weed out candidates who do not have support.

applies to all candidates equally. *See* N.Y.C. Charter § 1057-b(a)(1). Thus, to meet this requirement, Mr. Piccolo must plead facts to establish that it is the administration of the provision that results in different treatment to him as a member of a disadvantaged group. *See Comer*, 37 F.3d at 793 (holding that plaintiff had standing to challenge a facially race neutral local housing preference policy that caused African American residents to be treated differently because "the erection and application of the local preference acts as a proxy for race . . . ."); *see also Rockefeller v. Powers*, 74 F.3d 1367, 1376 (2d Cir. 1995) (holding that a signature requirement made it more likely that plaintiffs would have "a more narrow choice of delegates pledged to the various presidential candidates" "if [plaintiffs'] statistical arguments are credited").

Mr. Piccolo has not met this burden. Despite alleging that inadequate signature verification allows candidates who have acquired fewer than 3,750 signatures onto the ballot, Opp. at 4, Mr. Piccolo pleads that it is difficult for some candidates to meet the ink signature requirement, Compl. at 5–6. Even accepting these allegations as true, Mr. Piccolo does not have standing to assert this claim because he did not attempt to meet the signature requirement. Opp. at 4. Nor does he allege that he intended to do so. *See generally* Compl. To the contrary, he argues that he intentionally chose not to. Tr. at 13:24–25. As a result, there is no basis on which the Court can conclude that the signature requirement as administered results in differential treatment. *See MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 47–48 (2d Cir. 2017) (holding that casino developer that had "not alleged any concrete plans to enter into a development agreement with a Connecticut municipality[] or demonstrated any serious attempts at negotiation" lacked standing to challenge state law creating special registration pathway for federally recognized Native American tribes). Accordingly, Mr. Piccolo has not established standing to maintain an equal protection challenge to any of the alleged barriers he identifies.

Mr. Piccolo also has not established standing to pursue his claims as a candidate under the

First Amendment.  The injury he asserts is that the petition process imposed a "de facto barrier" to his ability to get on the primary ballot, which "nullif[ied] his campaign."  Compl. at 16, 24.  Since Plaintiff seeks to challenge the statutes governing the petition process as far as they "regulat[e] [his] ability to engage in interactive political speech and associational activity, [his] standing to challenge the statute on its face is governed by the overbreadth doctrine."[3]  *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 144 (2d Cir. 2000) (citing *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. at 947, 955–56 (1984)).  "Under the overbreadth doctrine, [plaintiff] need only 'demonstrate a substantial risk that application of the provision[s] will lead to the suppression of speech.'"  *Id.* (quoting *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998)).  Mr. Piccolo has not alleged sufficient facts to demonstrate a substantial risk that the laws governing the petition process will suppress speech.  He alleges that "the system effectively silences independent and grassroots candidates by making it nearly impossible for them to qualify."  Compl. at 16.  He does not allege any facts that demonstrate this impossibility.  He does not even allege facts demonstrating it was impossible for *him* to qualify, because he does not allege that he tried to meet the requirements and found the barriers insurmountable.  Without more, Mr. Piccolo's allegations that it is impossible for certain candidates—himself included—to qualify for the primary ballot is another "conclusory statement[]," and is insufficient to establish the constitutional minimum of standing.  *Harris*, 572 F.3d at 72.

### ii.    Voter Standing

Mr. Piccolo's standing to bring this lawsuit fares no better if the Court construes his injuries as those of a voter because any injury is no more than a generalized grievance.  To confer standing, an injury must be particularized; in other words, it "must affect the plaintiff in a personal and

---

[3] Though in his opposition he frames his injury as "exclusion from the 2025 Democratic primary ballot," Opp. at 3–4, he does not allege that he submitted a petition that his Board actually denied a petition he submitted.  To the contrary, he alleges that he "submitted no signatures."  *Id.* at 4.

individual way." *Soule v. Connecticut Ass'n of Sch., Inc.*, 90 F.4th 34, 45–46 (2d Cir. 2023) (quoting *Spokeo v. Robins*, 572 U.S. 330, 339 (2016)); *see also Collins v. Merrill*, No. 16-cv-9375, 2016 WL 7176651, at *1 (S.D.N.Y. Dec. 7, 2016) (Sullivan, J.) (quoting *Lujan*, 504 U.S. at 561 n.1). "Accordingly, an injury that plaintiff 'suffers in some indefinite way in common with people generally' will not suffice." *See Collins*, 2016 WL 7176651, at *1 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006)). "'[A] voter fails to present an injury-in-fact when the alleged harm is abstract and widely shared or is only derivative of a harm experienced by a candidate.'" *Id.* at *2 (quoting *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 195 (2d Cir. 2001)). Here, Mr. Piccolo alleges that the voters of New York are injured because the "electorate is deprived of a genuine choice"—meaning any choice that excludes him. Compl. at 16. This is a quintessential generalized grievance, insufficient to confer standing. *See Collins*, 2016 WL 7176651, at *2. (dismissing a complaint for lack of subject matter jurisdiction where the plaintiff's complaint is "premised entirely on alleged injuries that [the] [p]laintiff shares with the general voting population . . . ."). Accordingly, Mr. Piccolo's complaint must be dismissed for lack of subject matter jurisdiction.

### B.    Merits

Even if Mr. Piccolo's complaint can be read to establish his standing to bring this lawsuit, his constitutional challenge to the petitioning process fails on the merits. "[C]ourts evaluate challenges to state action restricting ballot access under the *Anderson-Burdick* framework, and vary the level of scrutiny applied depending on the burden that the state law imposes on First and Fourteenth Amendment Rights." *Libertarian Party of New York v. New York Bd. Of Elections*, 539 F. Supp. 3d 310, 320 (S.D.N.Y. 2021) (citing *Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173, 176 (2d Cir. 2020)). "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S.

428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).[4]

The burden imposed by the ink signature requirement and the verification process is both reasonable and nondiscriminatory. When assessing the burden of a ballot access measure requiring signatures, "[w]hat is ultimately important is not the absolute or relative number of signatures required but whether a reasonably diligent candidate could be expected to be able to meet the requirements and gain a place on the ballot." *Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173, 178–79 (2d Cir. 2020) (internal quotations and citation omitted). "[A] requirement that ballot access petitions be signed by at least 5% of the relevant voter pool is generally valid, despite any burden on voter choice that results when such a petition is unable to meet the requirement." *Prestia v. O'Connor*, 178 F.3d 86, 88 (2d Cir. 1999).

New York City's requirement is 3,750 signatures, which is far less than 5% of Democratic voters in New York City. *See* Tr. at 24:12–16. This is not an excessive burden, nor is it a discriminatory one. *See SAM Party of New York v. Kosinski,* 987 F.3d 267, 276 (2d Cir. 2021) (upholding a signature requirement of 1,500 signatures or 5 percent of the off-year electorate for county and state assembly offices, whichever is less). While the possibility of legal challenges to petitions might increase the burden for a particular candidate, the presumptive validity of a designating petition offsets that burden. *Cf. Schulz v. Williams*, 44 F.3d 48, 57 (2d Cir. 1994) ("Past history indicates that the advantages of presumptive validity have made the ballot largely accessible to third-party contenders in New York.").

The minimal burden of the signature requirement is rationally related to New York's interest

---

[4] The Supreme Court has suggested that there does not exist a "constitutional right to have a 'fair shot' at winning [a] party's nomination." *New York State Bd. of Elec. v. Lopez Torres*, 552 U.S. 196, 205 (2008). However, the Second Circuit has applied the *Anderson-Burdick* framework in the context of candidates challenging the actions of the New York State Board of Elections during a party's primary. *See Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020). As discussed below, even assuming the Mr. Piccolo has experienced constitutional injury as a candidate sufficient to establish standing, his claims do not have merit.

in regulating elections. "Just as States may require persons to demonstrate 'a significant modicum of support' before allowing them access to the general-election ballot . . . , they may similarly demand a minimum degree of support for candidate access to a primary ballot." *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 204 (2008) (quoting *Jenness v. Fortson,* 403 U.S. 431, 442 (1971) (internal quotations omitted)).

Mr. Piccolo's argument that the partisan composition of the Board results in further ballot access restriction is unavailing. In his opposition, he argues that the Board's partisan membership is a "structural delegation of ballot gatekeeping to private political actors," and is therefore a constitutionally deficient ballot access restriction. Opp. at 6. However, the Board is not a private actor. It is a creature of state law. *See* N.Y. Election Law § 3-200. Though the major political parties may recommend Board members, they are ultimately appointed by the New York City Council—another public body. *Id.* §§ 3-200(2)–(3). It is true that the Board is composed of members of the two major political parties and has broad responsibilities in administering elections. But New York law provides for a process by which any voter can challenge a designating petition. N.Y. Election Law § 6-154(2).[5] And even though New York law "give[s] the major political parties . . . broad authority in supervising the administration of elections," this practice "does not by itself unconstitutionally burden fundamental voting or associational rights." *Green Party of State of New York v. Weiner*, 216 F. Supp. 2d 176, 193 (S.D.N.Y. 2002) (Lynch, J.). Accordingly, Mr. Piccolo has not stated a claim under Section 1983 for violations of his rights as guaranteed by the First or the Fourteenth Amendment.

## C.    Possible State Law Claims

Having dismissed his federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims that his complaint may be read to suggest. The liberal construction

---

[5] The Court notes that Mr. Piccolo has not alleged that he challenged any designating petition.

afforded to submissions by pro se litigants requires consideration of potential state law claims, even

if the plaintiff does not specifically assert state law claims.  *See McLeod v. Jewish Guild for the Blind*, 864

F.3d 154, 156–57 (2d Cir. 2017).  To the extent that Mr. Piccolo asserts claims under state law, the

Court declines to exercise supplemental jurisdiction over any such claims.  Pursuant to 28 U.S.C.

§ 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts

shall have supplemental jurisdiction over all other claims that are so related to claims in the action

within such original jurisdiction that they form part of the same case or controversy under Article III

of the United States Constitution."  However, pursuant to 28 U.S.C. § 1367(c)(3), the exercise of

supplemental jurisdiction over a plaintiff's state law claims is within the Court's discretion if it has

"dismissed all claims over which it has original jurisdiction."  The Second Circuit counsels against

exercising supplemental jurisdiction in such a situation:  "[I]f the federal claims are dismissed before

trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as

well."  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (internal

quotations omitted) (quoting *Castellano* v. *Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991)).  Having

dismissed all of Mr. Piccolo's federal claims, and there being no other basis for federal jurisdiction,

the Court declines to exercise supplemental jurisdiction over any potential state law claims.  *See* 28

U.S.C. § 1367(c)(3).  Accordingly, the Court dismisses any state law claims without prejudice.

    **D.**　　**Leave to Amend**

    The Court will not grant Mr. Piccolo leave to amend his complaint.  District courts generally

should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defect,

unless amendment would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011);

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Indeed, the Second Circuit has cautioned that

district courts "should not dismiss [a pro se complaint] without granting leave to amend at least once

when a liberal reading of the complaint gives any indication that a valid claim might be stated."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  However, amendment is futile where there is a substantive problem with a cause of action that cannot be cured by pleading additional facts.  *See id* (affirming district court's dismissal with prejudice because "the problem with [the pro se plaintiff's] causes of action is substantive" and "better pleading will not cure it").  Mr. Piccolo's complaint is legally deficient because the features of New York's election law that he challenges are not invalid under the United States Constitution.  Repleading will not cure this deficiency.  Accordingly, the Court dismisses his federal claims with prejudice.

## V.    CONCLUSION

For the foregoing reasons, the Board's motion to dismiss is GRANTED.  Plaintiff's federal claims are dismissed with prejudice and his state claims are dismissed without prejudice.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Court requests that counsel for Defendant provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.  The Clerk of Court is directed to enter judgment for Defendant, to terminate the motion pending at Dkt. No. 50, to mail a copy of this order to Plaintiff by certified mail, and to close this case.

SO ORDERED.

Dated:  October 31, 2025
          New York, New York

_____
        GREGORY H. WOODS
     United States District Judge